Lovejoy *v.* Lovejoy.

---

JAMES W. LOVEJOY

*v.*

DIAH LOVEJOY and others.

To secure an existing indebtedness, a deed (in fact a mortgage) was given by D. to J. By an error in the description, it covered only eleven feet of the frontage of one of the lots. Other creditors afterwards recovered judgments against D., and levied on the lot as described in J.'s deed. Then J. recovered a judgment against D., for the same debt, and levied on the whole lot, the mistake having been, meanwhile, discovered and rectified by another deed from D. to J.— *Held*, that J.'s lien on the eleven feet was prior to that of the other judgment creditors, by virtue of his mortgage; and on the remainder of the lot, by virtue of the levy under his judgment.

---

Bill to foreclose &c. On final hearing on pleadings and proofs.

*Mr. C. A. Bergen*, for complainant.

*Mr. S. H. Grey*, for answering defendants.

THE CHANCELLOR.

In April, 1873, the defendant, Diah Lovejoy, being indebted to the complainant, his brother, in the sum of about $4,350, besides interest, and being unable to pay it, conveyed to the latter, in fee (but, as they allege, merely as security for the payment of the debt), by deed executed by him and his wife, a farm in Stockton township, in the county of Camden; a lot of land on Second street, in the city of Camden, and certain vacant lots on Vine street, in that city; and also intended to convey a lot of land on the latter street, thirty-one feet front and rear by one hundred and five feet in depth, on which there was a dwelling-house. By an error in the description in the deed, only part (a piece eleven feet front and rear) of the last-mentioned lot was conveyed. On that piece a part of the dwelling-house stands. The error in the description was not discovered until February, 1874. In the meantime, certain other creditors of Diah Lovejoy had recovered judgments against him, which were liens upon his land in Camden county. Immediately after the mistake was discovered, he and his wife executed and delivered to the complainant a deed of confirmation, dated January 18th, 1874, but acknowledged on the 18th of February, in that year, stating the error and conveying the lot by a correct description. On the 15th of September, 1876, the complainant recovered a judgment against Diah Lovejoy, in the circuit court of Camden county, for the same debt which the deeds were given to secure, and caused a levy to be made, under the execution issued thereon, upon the last-mentioned lot, by a correct description. The levies made on the executions issued on the judgments of the other creditors were only upon that part of the lot described in the original deed to the complainant from Diah Lovejoy therefor.

Lovejoy *v.* Lovejoy.

The complainant filed his bill in this cause for reformation of the erroneous description, and for foreclosure and sale of the premises conveyed to him by the several deeds, alleging that those deeds, though absolute conveyances in form, were, in fact, only mortgages. The other judgment creditors are parties to the suit. He sets up, in his bill, his own judgment and the execution thereon and levy thereunder.

The defendant's judgment creditors answered, alleging that the deeds to the complainant were fraudulent, and intended to hinder, delay and defeat the creditors of Diah Lovejoy, and that the conveyance of January, 1874, by the latter to the complainant, was subject to the lien of their judgments.

The proof of a *bona fide* indebtedness from Diah Lovejoy to the complainant, as alleged in the bill, is entirely satisfactory. There seems to be no room to doubt that the complainant did, in fact, in entire good faith, lend to his brother the sums of money, at the times and in the manner stated in the bill. It also appears that the deeds were taken by him as security for the debt, and that he had no ulterior or other design in accepting them. None of the land, it should be remarked, except the last-mentioned Vine street lot, remains to the complainant. All the rest has either been conveyed by him in satisfaction of prior encumbrances, or has been sold by virtue of judicial proceedings on such encumbrances, and he has realized nothing therefrom. The complainant and Diah both swear that the former did not purchase the property, and that the deeds to him were intended for mortgages only, to secure the debt due to the former from the latter. Diah swears that he proposed to give the complainant a mortgage on the property, and that he gave deeds instead of a mortgage, by the advice of the attorney whom he employed to draw the papers, that form of security being advised to save expense of foreclosure.

The complainant testifies that Diah, when he gave him the deeds, said it was the best he could do for him, that they were but second mortgages at best, and added that he had put the conveyances in the form of deeds instead of a mortgage, by the advice of the attorney before mentioned, for the reason that the property was heavily encumbered, and that it was customary in such cases to make deeds instead of mortgages as security, and the deeds were the same as mortgages. The attorney testifies that the deeds were made to secure the complainant's debt, money that Diah had borrowed of him. The complainant appears also to have kept an account of the rents received by him from, and money by him paid for or on account of, the properties, crediting Diah with the former and charging him with the latter. He appears to have lent to Diah, for the accommodation of the latter, almost, if not quite, all his property. He complained to Mr. Fredericks, the sheriff, as is proved by the defendants, that Diah had stripped him of everything—had taken every dollar he had. In taking the deeds, he seems to have been actuated merely by a desire to secure his debt. If Diah entertained the design of protecting the property from his other creditors by the conveyance, the complainant does not appear to have participated in it. Through his attorney, he offered to the answering defendants, through their attorney, when they were about to sell the property under their judgments, to convey the property to them on payment of his debt. He would be entitled in equity to have the property sold to pay his debt, if the honesty of the conveyance were left in doubt. *Demarest* v. *Terhune, 3 C. E. Gr. 532.* The complainant is entitled to a decree for the foreclosure and sale of the Vine street house and lot. His mortgage gives him priority so far as the part conveyed by the original deed to him therefor is concerned. As to the rest, though the lien of the judgments of the answering defendants is superior to his under his mortgage, he is entitled to priority by virtue of his judgment. He insists that, having proved that the omission of part of the lot from the

description in the deed of 1873 was a mere mistake, he is in equity entitled, as against the answering defendants' judgment creditors, to a reformation of that deed· or to the benefit of the deed of confirmation as a reformation.  He insists that they must be held to have had notice by the mere circumstances of the intention to convey the whole of the lot.  The circumstances relied on are that Diah Lovejoy owned but eleven feet of the lot as described in the original deed to the complainant, the error being a mistake of twenty feet in locating the·property in the description, and that the judgment creditors in their levies described the property in the same way, intending thereby to include the whole lot and not eleven feet thereof only.  These circumstances cannot be regarded as·notice.  The complainant took his original deed as security for an existing debt (it was two years old), and parted with nothing of value for it when it was given.  He has, therefore, no equity, so far as his mortgage is concerned, superior to that of the answering defendants as judgment creditors (*Wheeler* v. *Kirtland, 9 C. E. Gr. 552*); but he has a legal right superior to theirs under his judgment and execution and· levy thereunder. Though his judgment is junior to theirs, he has a levy thereunder on the part of the lot not covered by the description of his original deed therefor, while they have not, and he is, therefore, entitled to priority of lien thereon.  *Rev. p. 1044, § 9; Clement* v. *Kaighn, 2 McCart. 47.*  As to part of the lot, then, he is entitled to priority by virtue of his mortgage; and as to the rest, though subsequent under his mortgage, he is prior by virtue of his levy.

There will be a decree accordingly.